IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT DOLEMBA, ) <br> on behalf of plaintiff and the classes defined ) <br> below, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> THE LIFE INSURANCE CENTER, LLC, ) <br> CRUMP LIFE INSURANCE SERVICES, INC., ) <br> doing business as INSURENOW DIRECT; and ) <br> INSURANCEONLY, INC., ) <br> ) <br> Defendants. ) | 16-cv-8091 <br> Honorable Judge Elaine Bucklo <br> Magistrate Sheila Finnegan |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Scott Dolemba ("Plaintiff" or "Dolemba") on behalf of himself and all others similarly situated, respectfully requests pursuant to Fed. R. Civ. P. 23(b)(3) that the Court enter an order: (1) conditionally certifying the settlement class defined *infra*; (2) preliminarily approving a class action settlement as set forth in the Class Settlement Agreement attached hereto as Appendix 1; (3) directing notice to the conditionally certified class; and (4) setting dates for exclusions, objections, and a Fairness Hearing.

In support of his motion, Plaintiff respectfully states as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

1.      In his Complaint, Plaintiff alleged that he received a series of automated calls on his cell phone seeking to sell him life insurance. The Complaint alleged that these calls were placed using an automated telephone dialing system and/or an artificial or prerecorded voice, and made without his prior express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and state law. The Complaint alleged that the calls were made on

behalf of defendant The Life Insurance Center, LLC ("TLIC"), and that defendant Crump Life Insurance Services, LLC ("Crump") is responsible for the conduct of TLIC because TLIC is now a "division" of Crump doing business under the name InsureNOW Direct.

2. Plaintiff thereafter filed a First Amended Complaint adding InsuranceOnly, Inc. ("InsuranceOnly") as a defendant. The First Amended Complaint alleged that the calls in question were placed by InsuranceOnly, a company in the business of selling sales leads to insurance companies, and that the calls to Plaintiff and the other alleged class members were then transferred to TLIC by InsuranceOnly. The First Amended Complaint alleges that InsuranceOnly was compensated by TLIC through the purchase of sales leads generated by telephone calls.

3. Claims against TLIC were dismissed on November 11, 2016. Plaintiff agreed to the dismissal because the calls Plaintiff received were made after the business of TLIC had been acquired by Crump, through an asset purchase, and TLIC had ceased operations. The proposed settlement class period covers only the post-acquisition period.

4. Crump responded to the First Amended Complaint by filing a motion to dismiss, arguing that Crump is neither directly nor vicariously liable for the alleged calls since Crump neither placed the calls nor authorized or ratified the conduct of the caller. Crump's motion argued that the caller, InsuranceOnly, was not acting as an agent of Crump in placing the calls, but was merely a vendor that sought to sell sales leads to various insurance companies, depending on the interests expressed by the prospect during the call and other factors. Crump argued that InsuranceOnly did not make any call (such as the calls to Plaintiff Dolemba) on behalf of Crump, and indeed did not even know at the time of placing the call whether the lead would be transferred to Crump or another company or no one at all. Crump's motion to dismiss remains pending before the Court. Were the litigation to continue, Plaintiff would oppose the motion and argue that Crump is liable for the calls to Dolemba and the other putative class members placed by InsuranceOnly in those cases where the call was ultimately transferred to Crump.

5. After Crump's motion to dismiss was filed, the Parties began to explore the possibility of settlement. The Parties participated in numerous conferences, in which they discussed both the substantive issues of the case, the size of the alleged class, and their perspectives on a potential resolution of the claims at issue. Eventually, the Parties reached agreement on this class settlement.

6. Counsel for Plaintiff and Defendant Crump have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

7. Based upon this review and analysis, and following extensive negotiations, Plaintiff and the Defendant Crump entered into the Settlement Agreement, attached hereto as Appendix 1[1] and summarized herein.

## II. CLASS SETTLEMENT AND NOTICE

8. For settlement purposes, the Parties have stipulated to the certification of a class ("the Class") defined as follows:

> All persons who, on or after January 1, 2016 and through September 5, 2016, received calls from InsuranceOnly, Inc. on their cellular telephones soliciting insurance business that were placed using an automated dialer or prerecorded or artificial voice and that resulted in such calls being transferred to The Life Insurance Center, LLC or InsureNOW Direct or Crump Life Insurance Services, Inc., regardless of whether the sales lead was ultimately purchased from InsuranceOnly, Inc.

9. Plaintiff contends that the Class as defined meets all the requirements of Rule 23. Specifically:

---

[1] All capitalized terms not otherwise defined herein are defined in accordance with the definitions set forth in the Settlement Agreement.

(a) Class members are ascertainable and so numerous that joinder of all members is impracticable; according to Defendant's business records, there are approximately 960 persons and/or entities who fall under the stipulated definition above.

(b) There are questions of law or fact common to the Class, and there is a well-defined community of interest among Class members with respect to the subject matter of the lawsuit;

(c) The claims of Plaintiff are typical of the claims of Class members;

(d) Plaintiff has fairly and adequately protected the interests of the Class members;

(e) A class action is superior to other available methods for an efficient adjudication of this controversy; and

(f) The law firm of Edelman, Combs, Latturner & Goodwin, LLC is qualified to serve as counsel for the Class.

10. **Settlement Recovery**.  Subject to the terms of the Agreement, Crump has agreed to create a $145,000.00 Settlement Fund (hereinafter "the Settlement Fund"). The Settlement Fund will be distributed as follows:

a. Reasonable costs of notice and administration, not to exceed $6,250 will be paid from the Settlement Fund.

b. Plaintiff Scott Dolemba will apply for an award of up to $7,500 as an incentive award for services as a Class Representative. Plaintiff's incentive award must be approved by the Court. This amount shall be in addition to any amount plaintiff may recover as a Settlement Class Member.

c. Plaintiff's counsel's attorney's fees, which must be approved by the Court. Plaintiff's counsel shall submit a request for attorney's fees in an amount not to exceed $43,750

or 1/3 of the Settlement Fund made available to the class. The request will be filed 28 days prior to the deadline for Class Members to submit objections.

    d. If the deductions described in subparagraphs (a)-(c) are approved by the Court, the Net Settlement Fund (no less than $87,500.00) will be divided pro rata among Settlement Class Members who do not opt-out of the Class. As there are 960 Class members, and Class members will divide an estimated $87,500.00, Defendant shall pay an estimated $91 to each Class member who does not opt-out of the Class. *Class members will not need to submit a claim form to receive a check.* In the event one or more checks remains un-negotiated by the void date, a second check will be distributed to those Class members who negotiated their first checks, assuming the amount of the second check is $10.00 or more. Otherwise, any un-negotiated checks shall be donated on a *cy pres* basis to LAF (Legal Assistance Foundation of Metropolitan Chicago), subject to the approval of the Court. If a second distribution is made and there remain any un-negotiated checks by the void date, the amount of the un-negotiated checks shall likewise be distributed on a *cy pres* basis to Legal Assistance Foundation of Metropolitan Chicago. No portion of the money paid by Defendant pursuant to the Agreement shall revert to Defendant.

    e. All settlement checks shall be void 90 days from the date of issuance and shall so state on the check. Any unclaimed or undistributed amounts remaining in the Settlement Fund after all payments required under the Settlement Agreement have been made shall be distributed to as described above.

  11. **Class Notice**. The Agreement provides that, no later than thirty (30) days of the entry of the Preliminary Approval Order, Class Counsel or its designated Settlement Administrator shall cause the Class Notice to be sent via first class U.S. mail (in a form substantially similar to that attached hereto as <u>Exhibit B</u> to <u>Appendix 1</u>), postage prepaid to each

Class member identified on the class list prepared by Defendant, or by email where a postal address is not available but an email address is on file (in a form substantially similar to that attached hereto as Exhibit C to Appendix 1). Class members shall have 60 days from the mailing of the notice to request exclusion from the class or file an objection to the settlement. Where class members are notified by email, they will be asked to provide a postal address to which the settlement check may be mailed.

12. The Court should give preliminary approval to the settlement because it is a fair and reasonable compromise of disputed claims wherein, as demonstrated below, each of the requirements for certification of the Settlement Class is met.

    a. **Rule 23(a)(1) -- Numerosity**. Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." The numerosity requirement is satisfied if it is reasonable to conclude that the number of members of the proposed class is greater than the minimum number required for class certification, which is about 10-40. *Kulins v. Malco*, 121 Ill. App. 3d 520, 530, 459 N.E.2d 1038 (1st Dist. 1984) (19 and 47 sufficient); *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 class members sufficient); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (10-29 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (72 class members sufficient).

In the present case, Crump has determined, based on a review of its records, and other documents, that the calls at issue were placed to 960 unique recipients. This plainly satisfies the numerosity requirement.

    b. **Rule 23(a)(2) -- Commonality; and Rule 23(b)(3)- Common Questions**

- 5 -

**of Law or Fact Predominate**. Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. The commonality requirement is satisfied if there are common questions linking the class members that are substantially related to the outcome of the litigation. *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975). Common questions predominate if classwide adjudication of the common issues will significantly advance the adjudication of the merits of all class members' claims. *McClendon v. Continental Group, Inc.*, 113 F.R.D. 39, 43-44 (D.N.J. 1986); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987); *Spicer v. Chicago Board Options Exchange*, CCH Fed.Sec.L.Rptr. [1989-90 Transfer Binder] ¶94,943, at p. 95,254 (N.D. Ill. 1990); *Alexander Grant & Co. v. McAlister*, 116 F.R.D. 583, 590 (S.D. Ohio 1987). Where a case involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988).

The Settlement Class is defined in terms of all persons and entities who, during the Class Period, received calls on their cellular telephones soliciting insurance business that were placed by InsuranceOnly using an automated dialer or prerecorded or artificial voice and that resulted in such calls being transferred to TLIC or InsureNOW Direct or Crump, regardless of whether the sales lead was ultimately purchased from InsuranceOnly. Here, there are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

> (1) Whether InsuranceOnly engaged in a pattern of using automated equipment to make calls to cell phones;

(2) The manner in which InsuranceOnly compiled or obtained its list of cellular numbers and whether InsuranceOnly obtained the prior, express consent of the called parties to place the calls;

(3) Whether the calls were made by InsuranceOnly as an agent of Crump, or with actual or apparent authority from Crump, or whether the conduct of InsuranceOnly was ratified by Crump, such that Crump is liable for any violations of the TCPA by InsuranceOnly.

Several courts have certified class actions under the TCPA finding that common questions predominate. *See, e.g.*, *Holtzman v. Turza*, 08 C 2014, 2009 WL 3334909 (N.D. Ill., Oct. 14, 2009), aff'd in relevant part, 728 F.3d 682 (7th Cir. 2013); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 07 C 5456, 2009 U.S. Dist. LEXIS 67323 (N.D. Ill. July 27, 2009); *Sadowski v. Med1 Online, LLC*, 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *Hinman v. M & M Rental Ctr.*, 06 C 1156, 2008 U.S. Dist. LEXIS 27835 (N.D.Ill., April 7, 2008); *Targin Sign Sys. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.Supp. 2d 894 (N.D. Ill 2010); *Garrett v. Ragle Dental Lab, Inc.*, 10 C 1315, 2010 WL 4074379 (N.D. Ill. Oct. 12, 2010); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Okla. Ct. App. Oct. 31, 2006); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Kavu, Inc. v. Omnipak Corporation*, 246 F.R.D. 642 (W.D. Wash. 2007); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Airz. (App.) 94, 50 P.3d 844 (2002); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285, 263 P.3d 767 (2011); *Karen S. Little, LLC v. Drury Inns, Inc.*, 306 S.W.3d 577 (Mo. App. 2010).

c. **Rule 23(a)(3) – Typicality**. Rule 23 requires that the claims of the named Plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may

control even in the face of differences of fact.

*De La Fuente v. Stokely Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named Plaintiff, namely they are persons and entities with cellular phone numbers that, during the Class Period, received calls on their cellular telephones from InsuranceOnly soliciting insurance business that were placed using an automated dialer or using prerecorded artificial voice and that resulted in the calls being transferred to Crump or the business whose assets it acquired, TLIC, doing business now as InsureNOW Direct.

    d.  **Rule 23(a)(4) -- Adequacy of Representation**. The adequacy of representation requirement involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices, including many cases under the TCPA. Counsel's qualifications are set forth in <u>Appendix 2</u>. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to pursue this action vigorously.

    e.  **Rule 23(b)(3) -- Class Action Is Superior to Other Available Methods of Resolving This Controversy**. A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims is small because generally the class members are unaware of their rights and have damages too modest for it to be feasible for them to bring individual actions.

"[O]ne of the primary functions of the class suit is to provide a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group." *Brady v. LAC, Inc.*, 72 F.R.D. 22, 28 (S.D.N.Y. 1976).

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted). Another court has noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller, and Kane have discussed in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; *see, e.g.*, Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'). The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 625 (E.D. Pa. 1994).

13. Rule 23(e) requires judicial approval of a proposed class action settlement based on a finding that the agreement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). The first step, preliminary approval, assesses whether the settlement falls "within the range of possible approval," in order to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. Of Sch.*

*Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). Once class members are notified, they will have the opportunity to express their views by objecting to the proposed settlement, opting out of the proposed settlement class, or participating in the proposed settlement, and the Court will proceed to the second step, conducting a fairness hearing.

14. While a full analysis of all of the factors showing that the proposed settlement is "fair, reasonable and adequate" would be premature at this preliminary stage, Plaintiff submits that the proposed settlement meets that standard, and is certainly "within the range of possible approval" to justify notifying class members and proceeding to a fairness hearing. This is a case where the proposed settlement class consists of 960 members, which is relatively small by the standards of TCPA cases. Thus, even if each class member were to prevail and recover statutory damages of $500 on his or her TCPA claim, the aggregate damages for the class would be only $480,000. The costs of litigating this case through the pending motion to dismiss, other motion practice, discovery, class certification, trial and appeal would likely far exceed the recovery available to the class, even if the class were to prevail. Moreover, the claims against TLIC have been dismissed (and TLIC was no longer operating during the settlement class period), defendant InsuranceOnly is a small business with very limited assets, and defendant Crump has raised defenses contending that Crump is not liable for the calls that InsuranceOnly placed to the class members. "Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation," *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011), where "this drawn-out, complex, and costly litigation process . . . would provide Class Members with either no in-court recovery or some recovery many years from now . . . ." *In re AT&T Mobility Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Instead of a lengthy litigation whose costs would likely exceed the potential recovery, class members will receive a significant payment estimated at $91 per member, which exceeds the

amount recovered by class members in many TCPA settlements. The settlement is a solid achievement for the class in a case raising difficult challenges.

15. For all of these reasons, counsel for Plaintiff and the proposed class believe that the settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable, and adequate, and would be in the best interest of the class members.

### III. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests, pursuant to Fed. R. Civ. P. 23(b)(3), that the Court enter an order: (1) conditionally certifying the settlement class defined *supra*; (2) preliminarily approving a class action settlement as set forth in the Class Settlement Agreement attached hereto as Appendix 1; (3) directing notice to the conditionally certified class; and (4) setting dates for exclusions, objections, and a Fairness Hearing.

Respectfully submitted this 19th day of June, 2017.

*s/ Daniel A. Edelman*
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle A. Alyea
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email: dedelman@edcombs.com

## CERTIFICATE OF SERVICE

      I hereby certify that on June 19, 2017, the foregoing was filed through the Court's electronic filing system, which will send notice to all counsel of record.

      s/ *Daniel A. Edelman*
      Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email: dedelman@edcombs.com